### AMASON v. HARRIGAN.   (No. 7719.)

(Court of Civil Appeals of Texas. San Antonio. Oct. 20, 1926. Rehearing Denied Nov. 17, 1926.)

1. **Appeal and error** ⟐⟿71(4)—**Appeal will lie from interlocutory order appointing receiver in vacation (Rev. St. 1925, art. 2250).**

Appeal may be taken from an interlocutory order appointing receiver in vacation by district judge, notwithstanding Rev. St. 1925, art. 2250.

2. **Receivers** ⟐⟿5—**Order appointing receiver on day before original petition was filed held void.**

Order appointing receiver on day before original petition in suit was filed *held* void as made when no suit was pending to support appointment.

3. **Judgment** ⟐⟿538—**Orders and judgments are given effect as of date when made.**

Orders and judgments are given effect from the date made without reference to date of actual entry.

4. **Appeal and error** ⟐⟿662(2)—**Recitation, in order appointing receiver, that it was granted on hearing of application does not raise presumption against record showing original petition was filed thereafter.**

Recitation, in order appointing receiver, that it was granted on hearing of application does not raise presumption against actual record showing that order was made on day before original petition in suit was filed.

---

⟐⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. Receivers ⚖═5—Receiver cannot be lawfully appointed until action therefor has been commenced and petition filed.**

Receiver cannot be lawfully appointed until action therefor has been commenced, and for such purpose an action is not deemed to have commenced until petition therein is filed with clerk of court.

**6. Chattel mortgages ⚖═281—Appointment of receiver of mortgaged property and crops in vacation and without notice held erroneous under circumstances showing no probability that property would be lost within such period as would preclude notice and hearing.**

Appointment of receiver of mortgaged property and crops in vacation, and without notice, *held* erroneous, in view of circumstances indicating no probability that mortgagor would dispose of property or contemplated sale or removal within such short time as would preclude notice and hearing on application.

**7. Receivers ⚖═16—Object in appointing receivers is to preserve and conserve property.**

Object in appointing receivers is to preserve and conserve property, not to destroy or dissipate or dispose of it.

**8. Receivers ⚖═98—Estate in custody of receiver should be preserved intact, unless property is perishable.**

When an estate is placed in custody of a receiver, it is to be preserved intact, until rights of claimants thereto are determined by orderly process, unless property is of perishable nature.

**9. Receivers ⚖═37—Necessity for appointing receiver without notice should be shown by allegations of specific facts.**

Necessity for appointing receiver without notice to adverse party should be shown by allegations of specific facts, and not by general conclusions.

**10. Receivers ⚖═35(1)—Power to appoint receiver without notice should not be exercised in doubtful cases, or where protection can be afforded in some other way.**

Power to appoint receiver without notice in cases of emergency, where notice would jeopardize delivery of property over which receivership is extended, should not be exercised in doubtful cases, or where sufficient protection can be afforded in some other way.

**11. Appeal and error ⚖═955—Appellate courts will revise action of trial court in appointing receiver when record shows abuse of discretion.**

Although appointment of receiver is matter largely within discretion of trial courts, appellate court should not hesitate to revise such action, where record clearly shows abuse of discretion.

On Motion for Rehearing.

**12. Appeal and error ⚖═712—Additional facts, not set out in application for appointment of receiver, have no effect on determination of appeal.**

Additional facts, alleged to have justified appointment of receiver which were not set out in application for appointment, have no effect on determination of appeal.

Appeal from District Court, Bexar County; Robt. W. B. Terrell, Judge.

Action by D. D. Harrigan against J. T. Amason. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

J. D. Dodson and U. S. Algee, both of San Antonio, and S. T. Dowe, of Pearsall, for appellant.

Denman, Franklin & Denman, of San Antonio, for appellee.

SMITH, J. D. D. Harrigan owns a 400-acre farm in Frio county, which he rented to J. T. Amason for the crop year of 1925–26, upon the usual "third and fourth" basis. The crop will amount to "probably more than 12 bales of cotton," and "other crops," the nature and extent of which is not disclosed in the record.

Early in the crop season Harrigan advanced $1,000 to Amason to be used in aid of the farming operations, for which Amason gave Harrigan his two promissory notes, each for $500, due respectively on September 1 and October 1, 1926, together with a chattel mortgage upon 2 horses and 18 mules, which Amason used in working the crops. This transaction was evidenced by a written agreement, the terms of which are not disclosed in the record. It is alleged by Harrigan that, because of the facts stated, he has a chattel mortgage upon the live stock, "and a landlord's lien upon the crops raised by Amason upon said premises to secure the payment of said notes."

This action was brought by Harrigan against Amason to recover upon the two notes and the landlord's share of the crops, and for foreclosure of the mortgage and landlord's liens, and for the appointment of a receiver for the crops and live stock, and for an injunction requiring Amason to turn over the crops and live stock to the receiver, and restraining him from interfering with the latter. The action was instituted in Bexar county, while defendant is shown to be a resident of Frio county, where the rented premises and all the property involved were then situated. The notes sued on, however, are payable in Bexar county. The plaintiff's prayer for relief was substantially reflected in the court's order thereon, as follows:

"On this 9th day of September, 1926, came on to be heard the application of plaintiff herein for the appointment of a receiver and for injunctive relief, and, the same having been considered by the court, it is ordered, adjudged, and decreed that Fred H. Lancaster, of San Antonio, Bexar county, Tex., be, and he is hereby, appointed receiver herein to take charge of the crops grown upon the 400 acres, more or less, heretofore leased by D. D. Harrigan to

defendant J. T. Amason out of the Upper Sackville ranch in Frio county, Tex., including those crops heretofore gathered and those now standing ungathered, wherever the same may be located, and all proceeds therefrom, and to control and manage the same and gather and market the same, and to collect from defendant all moneys heretofore received by him from crops sold from said leased premises, and to pay into this court all moneys derived from said properties, to be hereafter apportioned, from time to time, as directed by the orders of this court; and to take charge of and care for the horses and mules heretofore mortgaged to plaintiff and described in plaintiff's petition, to which reference is here made; and the defendant J. T. Amason, and each and all of his agents and employés, are hereby required forthwith, upon demand of said receiver, to turn over and deliver to him all of said crops gathered and ungathered and the proceeds thereof, and all of said horses and mules, and are hereby restrained and enjoined from interfering with, or disposing of, any of the assets or properties aforesaid, or from interfering with the possession of the receiver of said properties, or any of them, or from interfering with the receiver in gathering or marketing any of said crops.

"The receiver is hereby directed to report to the court, from time to time, and account for all transactions made by him.

"It is further ordered, adjudged, and decreed that the bond of said receiver be, and the same is hereby, fixed at the sum of $500, conditioned as provided by law."

The original petition whereby this action was instituted was not filed in the court below until September 10, 1926, whereas the order appointing a receiver and granting the temporary injunction was made on the previous day, September 9th. The receiver took the oath, and gave bond as such on the 10th. No bond was exacted or given in support of the injunction.

The receiver was appointed and the injunction granted upon the petition without a hearing and without notice to the defendant in the proceeding. No writ of injunction appears to have been issued upon the order granting the same, nor does it appear that the defendant was given any character of notice of the granting of the restraining order or of the appointment of a receiver for his property, until September 11th, two days after the order was made, and the day following that on which the receiver qualified, when the following writ of attachment was issued, directed to the sheriff or any constable of Frio county:

"You are hereby commanded that you arrest the person of J. T. Amason, if to be found within your county, and have him before our Seventy-Third district court of Bexar county, Tex. (or before the judge), on the 13th day of September, A. D. 1926, at 10 o'clock a. m., then and there to answer an alleged contempt in disobeying the commands of a writ of injunction and order appointing receiver issued out of said court on the 10th day of September, A. D. 1926, and served upon said J. T. Amason on the 11th day of September, A. D. 1926, it being alleged by receiver of this court that he wholly fails and refuses to obey the commands of said writ. You are hereby further commanded to retain him in custody until he shall be discharged by our said court."

On the 13th, the sheriff, having arrested appellant, produced him before the court as directed in the writ of attachment, but no further orders concerning his personal status appear in the record, which was made up on the 29th. If he is still detained, it does not so appear, it is true; nor does it appear, upon the other hand, that he has had a hearing upon the contempt charge, or that he has been released.

Two days later, on September 15th, the receiver filed the following application with the court:

"Now comes the receiver herein and respectfully represents to the court that he is of the opinion that it would be best for him, as receiver, to remove the 20 mules and horses, described in plaintiff's petition, from their present location to Bexar county, Tex., for their safe-keeping, and to sell the same at private or public sale for cash to the highest bidder, subject to confirmation of any such sale by the court.

"Wherefore this receiver prays that the court enter its order herein authorizing and directing the removal of said animals to Bexar county, Tex., and there care and keep them and sell the same in Bexar county, Tex., at private or public sale to the highest bidder for cash, subject to confirmation of said sale by the court."

This application was granted on the same day it was filed, apparently without notice to the defendant. If the receiver has been as diligent since the granting of the order as he had been up to that time, then appellant's horses and mules have long since been brought to Bexar county and disposed of to the highest bidder, at public or private sale, in the discretion of the receiver, but subject to confirmation, and his crops gathered and sold in like manner.

Summarizing, it appears that within a period of four days, without notice to appellant, or giving him an opportunity to be heard at any stage or upon any step of the proceedings, a receiver was appointed, and took possession of, and probably by now has gathered and sold, appellant's 12 bales of cotton and all his other crops, including appellee's, as well as his, share thereof, and all of his work stock. He has been arrested under a writ of attachment, and brought from his home in Frio county to the county seat of Bexar county, and there held subject to the orders of the court below for contempt in failing or refusing to obey the injunction, and for failing to turn over his property to the receiver. His work stock has been seized and brought from his farm in Frio county to Bexar county, and, presumably, has there been sold by the receiver at forced sales. All

this has been done to secure the payment of two $500 notes held by appellee against appellant, one of which notes had not matured when the proceedings were had or when this appeal was filed, and to secure the landlord's lien upon appellant's crops, of which appellee's share was one-fourth of the cotton and one-third of all other crops. This court is now called upon to determine the necessity and orderliness of these proceedings and the validity of the process by which they were pursued.

[1] At the outset we are confronted with a question of jurisdiction. Appellee has filed a motion to dismiss the appeal upon the ground that an appeal does not lie from an interlocutory order appointing a receiver, when made in vacation by a district judge; or, as stated by appellee, "an appeal lies only from an interlocutory order of the district court appointing a receiver or trustee in any cause as provided by article 2079 (section 2250, R. S. 1925), but the statute gives no right of appeal when the order appointing a receiver is made by the judge in vacation time." We overrule this contention upon the authority of Birmingham Drug Co. v. Freeman, 15 Tex. Civ. App. 451, 39 S. W. 626.

[2, 3] In his first proposition of law appellant asserts that the order appointing the receiver was void, because it was made when no suit was pending to support such appointment. This contention is based upon the showing in the record that the order appointing the receiver was made on September 9th, whereas the original petition in the suit was not filed with the clerk of the court until the day following, September 10th. Appellee has attached an affidavit of the clerk showing that the order was not entered in the minutes until September 10th, and urges that this affidavit, in connection with the recitation in the order appointing the receiver that "on this 9th day of September, 1926, came on to be heard the application of plaintiff herein for the appointment of a receiver, * * * and the same having been considered by the court," etc., creates a conclusive presumption that the order was not in fact made until September 10th, the day the petition was filed. The fact that the order was not actually entered in the minutes until the 10th can be given no significance, however, for orders and judgments are given effect from the date made without reference to date of actual entry, which, as is well known, is often delayed.

[4] Nor do we think the recitation in the order that it was granted "upon a hearing of the application" therefor raises a presumption against the actual record of the facts thereby sought to be overcome. The record shows the petition was not filed until the 10th. Until then it was not legally a petition, and could not support any official consideration or action. It follows, then, that the petition in this cause, which did not become such until the 10th, was not available as such on the 9th. Any other rule would enable parties to trifle with judges in derogation of the dignity of the courts and to the disruption of orderly procedure. It would enable parties, for example, to obtain the action of judges upon unfiled applications, and to then speculate upon that action, and file or withhold or delay the filing of the petition according to the slothfulness, caprice, or design of the parties.

[5] In pursuance of the principle stated, it seems to be settled in this state that a receiver cannot lawfully be appointed until an action therefor has been commenced, and that for this purpose an action is not deemed to have commenced until the petition therein is filed with the clerk of the court. An appointment thus prematurely made is therefore void and ineffectual. Webb v. Allen, 15 Tex. Civ. App. 605, 40 S. W. 342; Bingham v. Graham (Tex. Civ. App.) 220 S. W. 105; Solomon v. Mathews (Tex. Civ. App.) 238 S. W. 307. Accordingly, we sustain appellant's first proposition.

[6] In his second proposition appellant asserts that—

"It is error, in vacation and without notice, to appoint a receiver of mortgaged property where the application is not supported by a pleading which presents affirmative allegations of fact, as distinguished from general allegations and conclusions of the pleader, to show urgent necessity for the prevention of impending injury to the applicant, which may not be remedied by injunctive or other relief less expensive and harsh."

The cause of action asserted in the petition was, first, to recover upon two promissory notes for $500 each, one of which was 9 days past due, and the other of which was not to mature until 20 days after the suit was filed; to recover the landlord's interest in 12 or more bales of cotton then in process of gathering, and other crops, the nature and amount of which is not disclosed; and to foreclose a chattel mortgage lien upon 2 horses and 18 mules, and the landlord's lien upon the crops. There are no allegations disclosing the probable value of the crops or live stock. All of these properties were shown to be situated in Frio county, whereas the suit was brought in Bexar county, in which venue lay as to the notes, which are payable in that county.

It was alleged that appellant had declared to appellee that he would not pay said notes. It was further alleged that appellant had sold "one or more bales of cotton" produced on the rented premises, and had refused to account to appellee for his portion of the proceeds, but had converted the same to his own use and benefit; that appellant is now gathering the balance of the crop, and, unless restrained, will dispose of them, and convert

the proceeds to his own use and benefit, and will not account to appellee for his landlord's share. It was further alleged that appellee's interest in the crops and his security therefor "is in danger of being lost, removed, and materially injured," and "is not safe in the hands of" appellant. It was upon these allegations, and without any hearing or notice to appellant, that the receiver was appointed and the injunction granted whereby all of appellant's crops of whatsoever nature, and all of his work stock, were taken from him and placed in the hands of a receiver, with power to dispose of all of it summarily upon such terms as his judgment approved; and appellant was ordered to turn over the properties, together with all the proceeds of the property disposed of, to the receiver, and was restrained from interfering in any manner with the acts of the receiver.

[7] It is without hesitation that we have reached the firm conclusion that the trial judge erred in appointing a receiver, and especially in according him such broad powers as to enable him to so expeditiously dissipate the estate, without giving appellant an opportunity to be heard. The object in appointing receivers is to preserve and conserve property, not to destroy or dissipate or dispose of it.

[8] And, when an estate is placed in the custody of a receiver, it should be preserved intact until the rights of the claimants thereto are determined by orderly process, unless, indeed, the property is of such perishable nature that it will disintegrate, or waste, or depreciate in value, in which event only should the receiver be authorized to place it under the hammer pending adjudication.

[9] The necessity for appointing a receiver without notice to the adverse party should be shown by allegations of specific facts, and not by general conclusions of the applicant, as was sought to be done here. Even if the conclusions of appellee in this case had been sufficiently specific to show the facts stated, those facts are not deemed sufficient to warrant the unseemly haste evidenced in those proceedings, and did not negative the existence of any alternative, but less drastic and destructive, relief available to appellee, as should have been done. This is plainly true as to the cotton and other crops, and, as there were no allegations that appellant was about to remove or dispose of his horses and mules so as to place them beyond the reach of the litigants, there appears to be no excuse for seizing them, or at least so hastily removing them to a distant county and selling them out under the hammer.

The rule is well stated in 23 R. C. L. p. 28, that—

"Courts of equity are adverse to interfering ex parte, and will not ordinarily entertain an application for the appointment of a receiver, except upon notice to the adverse party. Such a court has no more power than any other court to condemn a man unheard and to dispossess him of property prima facie his, and hand over its enjoyment to another on an ex parte claim for it. It should therefore exercise extreme caution in the appointment of receivers on ex parte applications, and be careful that a proper case is presented before it acts, and it should not be done without notice to the party whose property is to be affected, except in cases of the greatest emergency, demanding immediate interference of the court."

And, after observing that the rule is not inflexible, but yields to imperative necessity for an ex parte appointment to prevent irreparable loss, the same authority declares that—

"Moreover, it has been held that a receiver will not be appointed without notice when a court has the powers to grant a temporary restraining order without notice, and the same is ample to protect the property until notice is given and the application for a receiver heard and determined."

[10] The rule is clearly stated in Tardy's Smith on Receivers (2d Ed.) § 731:

"The rule in respect to ex parte appointments of receivers may be stated as follows: A receiver may be appointed without notice where the defendant is beyond the jurisdiction of the court or cannot be found, or where some emergency is shown rendering the appointment before the giving of notice necessary to prevent imminent and irreparable injury, waste, destruction, or loss, or when notice itself will jeopardize the delivery of the property over which the receivership is to be extended. The situation must be such as to be of such imperious necessity that it requires immediate action and of a character that no other protection can be accorded to the plaintiff. * * * The power to make such appointments should not be exercised in doubtful cases, or where sufficient protection could be afforded in some other way, such as, for instance, by means of an injunctional order until notice can be given and the application for a receiver heard and determined."

This pronouncement of the rule is in accord with the decisions in Texas. Solomon v. Mathews (Tex. Civ. App.) 238 S. W. 307; Bingham v. Graham (Tex. Civ. App.) 220 S. W. 105.

Tested by the rule stated, the court below was not warranted in this case in appointing a receiver upon an ex parte hearing without notice to the defendant. No facts were alleged, no conclusions of the pleader, even, were asserted, which indicated a probability that appellant could or would gather and dispose of the cotton or other crops, or any appreciable part of them, within a period so brief as to preclude notice to the defendant and a hearing upon the application, or that the defendant contemplated the sale, removal, or disposal of the mortgaged horses and mules. It is obvious that the purpose of the extraordinary relief prayed for could have

been fully accomplished by issuance and service upon the defendant of a temporary restraining order prohibiting him from disturbing the status of the property or disposing of it until a hearing could have been had upon the application for both the injunction and the appointment of a receiver. Certainly notice of such restraining order and of the impending hearing could have been gotten to the defendant within the same period occupied by the receiver in reaching appellant's premises and demanding possession of his property, notwithstanding the somewhat startling celerity with which the receiver got on the ground and demanded possession of the property. By this simple means of a temporary restraining order, as distinguished from a temporary injunction, and at a nominal cost to the litigants, the property of appellant could have been held intact and its status fully preserved until notice could be given appellant, and he be given an opportunity to present his defenses to the wholesale charges made against him, and be heard concerning his rights in the matter. Whereas, by the course taken, appellant, without notice, without opportunity to defend himself or his property or his rights, was required to surrender the whole of the fruits of his year's labor, as well as all his work stock; was arrested and carried to a distant county to answer a charge of contempt because he acted in disregard of an injunction and receivership proceeding of which it appears he had had no previous notice; and, still without notice to him, his live stock was taken from his farm, removed to a distant county, and there disposed of at forced sale, because, forsooth, such course was, in the receiver's "opinion," "best for the receiver." These things were done without notice to appellant, all within a period of less than a week; and there has been added to his debt, if the proceedings are upheld, all the costs of such proceedings, including the receiver's expenses, commissions, and fees. We sustain appellant's second proposition, but overrule his remaining propositions upon the ground that they have become immaterial to this decision.

[11] While it is true that the granting of injunctions and the appointment of receivers are matters largely within the discretion of trial courts, yet nevertheless appellate courts will not hesitate to revise such actions when the record clearly shows an abuse of that discretion. We think this is such a case, made obvious by the record.

The order appealed from will be reversed, and judgment is here rendered that the receivership be vacated, and the injunction dissolved, at the cost of appellee in both courts.

### On Motion for Rehearing.

We did not intend in the original opinion to decide the merits of the order directing issuance of attachment for appellant, as appellee appears to construe that opinion. The fact was mentioned only as an incident of the summary proceeding, by which appellant, without being given any sort of notice or hearing, was at least temporarily deprived of his liberty and property.

Nor did we find as a fact that the receiver had actually sold appellant's horses and mules in accordance with the authority given him in response to his application. We simply suggested that, if he continued to be as diligent after as he was before obtaining the order, he must have sold the live stock by the time the appeal was determined.

In his motion for rehearing appellee goes beyond the record presented in the transcript, and denies that such sale had been made. If we take cognizance of matters occurring subsequent to the taking of the appeal, then it appears that the receiver as a matter of fact sold the live stock to appellee on September 29th for the sum of $935, and his motion for confirmation of the sale is pending. The probable sale was mentioned in the original opinion, not as having a controlling or even material effect upon the decision, but as another incident to the unreasonably harsh remedy resorted to by appellee.

[12] In his motion for rehearing appellee sets out a series of additional facts, by reason of which it is argued that the trial court was justified in appointing the receiver with the powers given him in this case. But none of these additional facts were set out in the application for the appointment of the receiver; they are without support in the record; and can have no effect in the determination of the appeal.

Appellee's motion for rehearing is overruled.