### JESSE BARTLETT'S HEIRS V. JAMES H. COCKE.

It was not essential under the Civil Code of Louisiana, in force here prior to 1840 nor under the act of Congress of that year, (Hart. Dig. Art. 1026,) that the extension of the time for the administration of a succession should have been made before the expiration of the year. The proposition that at the end of the year, the estate vested immediately in the heirs, on the supposition that the estate was fully administered and the administrator discharged by operation of law, is not sound.

Where an administrator's sale has been regularly made and the purchase money paid, [confirmation not being required by the laws then in force) a deed from the administrator to the purchaser is not essential to the defence of the latter or those claiming under him, in a suit by the heirs for the recovery of the land.

If necessary for the right of the purchaser, it would seem that an administrator, although his office may have expired, might execute a formal conveyance for lands sold and the purchase money paid during his administration.

See this case in confirmation of the case of Poor v. Boyce, 12 Tex. R. 440, on the point that under former laws for the extension of administrations, third persons were not required to look further than to see that a person once duly invested with the powers of administrator, continued to act with the sanction of the Probate Court.

It seems that it is not essential for an administrator's deed to recite the previous proceedings.

See this case as to equity, where heirs seek to recover land on the ground of defects in an administrator's sale.

Quere, whether the Statute of limitations would not run against an administrator from the time of the sale by him, and against all the heirs represented by the administrator, to cure defects in the proceedings anterior to the sale?

Appeal from Washington. It did not appear that a new bond was either ordered or filed at the extension of Feb. 25th, 1839. In the deed from Oliver Jones to McFaddin, the date of the petition for an order of sale was described as the 22nd of Oct., 1840, but the petition was copied at length and purported to conclude with a date in figures, as follows; "Washington, Oct. 22nd, 1842." The deed recited that the sale was made in pursuance of said order, on the 3rd of Dec., 1840.

*Lewis & Barber*, for appellants. I. The time of Jones

and Bartlett, as administrators of Jesse Bartlett's estate, was not extended by the order of Feb. 25th, 1839, neither is it sought in the petition; no new bond was given; new bond was required prior to Feb. 2nd, 1844. (Hart. Dig. Art. 1069 ;—Civil Code of La. Art. 1199.)

On the 13th day of Sept., 1839 the succession of Jesse Bartlett was not vacant.— (Fisk v. Norvel, 9 Tex. R. 13 ; Boyle v. Forbes, Id. 35 ; Flores v. Howth, 5 Id. 329.)

The property belonged to the heirs of Bartlett. (Fisk v. Norvel.) All debts against the estate were presumed to have been paid. (Fisk v. Norvel.) The Probate Court had no jurisdiction or authority to re-open it. (Boyle v. Forbes ; Fisk v. Norvel.)

But granting that the succession had not been closed prior to Sept. 13th, 1839, and that the order of that date was an appointment of Oliver Jones as sole administrator of the vacant succession, still the subsequest proceedings relative to said appointment, the failure of the Court to issue letters to him as such sole administrator, show that it was not regarded either by Oliver Jones or the Probate Court as a new appointment.

That order could not operate as an extension of time even if the estate had been open at that date. The petition did not pray for it, the order does not " affirmatively " extend it.

If the converse be true, for what period was the time extended ? It could not be extended for more than 12 months by the same order.

The limit of twelve months would have expired on the 30th day of Sept., 1840. But the first and only regular and legal extension of time given by the Probate Judge, after the first opening of the succession, was granted by order of the 22nd day of October, 1840, which was an extention of eight months from " the granting" said order, which time expired on the 22nd day of June, 1841. This was also the last order for extension of time.

Oliver Jones could not have been administrator of the estate of Bartlett, dec'd, on the 22nd day of October, 1840 ; the property by operation of law was vested in the heirs, and the Probate Court had no authority to make the order of that date or at any subsequent time. The calling Jones administrator in the orders of the Probate Court was not of itself on extension of time. It was not necessary before bringing this action to tender the purchase money. The doctrine of *caveat emptor* applies.

II. Was Oliver Jones administrator of the estate of Bartlett at the time of executing the deed to McFaddin? Even if he was administrator on the 22nd of October, 1840, his administration closed the 22nd of June, 1841. (See Sect. 5th, Feb. 1840, Hart. Dig. Art. 1026 and 1042.) A deed executed by Oliver Jones as administrator, and on the 25th day of Sept., 1844, (three years and three months after his administration was closed,) could confer no title upon the grantee,—not even if the order of sale and sale had been legal. He could not then have been held responsible upon his bond for his acts.

III. The deed from Oliver Jones to McFaddin is void for uncertainty. From the recitals in the deed it appears that the sale was made on the 3rd day of December, 1840, under an order dated the 22nd day of October, 1842; while the deed itself bears date the 25th day of Sept., 1844.

*J. Willie*, also for appellant.

*Giddings & Giddings*, for appellee.

HEMPHILL, CH. J. This was a suit by the heirs of Jesse Bartlett, deceased, to recover from James H. Cocke a tract of Land originally belonging to the estate of the deceased, and claimed by defendants through mesne conveyances from an administrator's sale. The main question in the cause is whether Oliver Jones, who acted as administrator at the sale

of the land, was in fact administrator, his term of office having
previously expired, as is contended by the appellants.   To
understand the position of the administrator at that date, it
will be necessary to recur to the principal proceedings had
in the Probate Court in relation to the estate.   Jesse Bart-
lett died in January, 1838, and on the 26th of the month,
Oliver Jones and Joseph Bartlett (one of the plaintiffs, in this
suit) were appointed administrators.   On the 25th Feb., 1839,
the administrators conceiving that by virtue of their offices
as administrators of Bartlett, they were compelled to adminis-
ter the successions of one Smith and of one Frind, prayed an
extension of time principally upon account of the last ; but a
general order was passed, allowing them six months, to make
a final settlement, which of course included the estate of
Bartlett.

On the 10th July, the administrators exhibited their account
showing a large amount of debts against the estate unpaid,
and praying for a more perfect inventory.   The account was
received and an inventory ordered, at the July Term, it is pre-
sumed, there being no date.   Subsequently to this Joseph
Bartlett resigned and was discharged, and Oliver Jones was
to render his bond as administrator, in a sum far beyond
twice the value of the estate.   The date of the resignation of
Bartlett, and the extension of time to Jones, or in fact his re-
appointment, is not stated.   The presumption is that these
acts were done at the August term, the bond of Jones, in com-
pliance with the order, being dated on the 13th of Sept., 1839.
On the 30th September, Jones, under his new appointment,
took his oath of office.   On the 31st December, 1839, the ad-
ministrator by petition represented the necessity of selling the
personal and a portion of the real  property to pay the debts
of the estate, and prayed a decree to that effect, which was
granted and a sale ordered.   No action was had under this
order, and a petition for sale was again filed on the 22nd of
October, 1840, referring in this petition to the home place, a

portion of which was proposed for sale, and there was a prayer for further time for the settlement of the succession. A sale was ordered, and eight months further time for the settlement of the estate was allowed.

In comformity with this order, the property in question, together with other portions of the estate, was sold on the first and second days of December, 1840,—And Nathan A. NcFaddin is set down as the purchaser.

In April, 1843, the administrator, at the petition of one of the heirs, joined by her husband, was cited to render his account, and this was exhibited and the administrator finally discharged in 1845, if the date of the proceeding be not misconceived.

It appeared from the evidence, that the deed from the administrators to McFaddin, the purchaser, bore date in September eighteen hundred and forty-four. In this connection it may be stated that McFaddin sold to Sleight, and Sleight to the defendant, James H. Cocke.

It appears from this recital, that the administration of Bartlett's estate was conducted with a due degree of regularity, and that notwithstanding the great lapse of time and the probable loss of some of the papers, yet there is scarcely a link wanting in the consecutive order of procedure, down to the sale, showing at least a substantial compliance with the requirements of the law. Before the expiration of the first year, there was an extension which would continue until the August term, in 1839. There was then in substance a new appointment. A new bond and oath were taken.

Had the administration been merely prolonged, the bond should have been for not more than one fourth beyond the estimated value of the estate, (Civ. Code, Art. 1199,) whereas, it was for much more than double the value of the property. The oath under this appointment, having been taken at the September Term, 1839, the administration would in fact commence at that date and continue until September Term, 1840.

The administration was, on the petition of the 22nd October, 1840, prolonged for eight months. It was not at all material that this extension should have been granted before the expiration of the year. The proposition that at the end of the year the estate vests immediately in the heirs, on the supposition that the estate is fully administered and the administrator discharged by operation of law, is not sound. If, at the expiration of the year, the estate be not in fact administered, there must of necessity be a prolongation, or the appointment of a new administrator, or as he might be termed, an administrator *de bonis non.* It would not be known, until the close of the year, whether there would be a necessity for an extension. This is believed to be a fair construction of the provisions of the Civil Code of Louisiana, with reference to the subject matter, (Art. 1197, Civ. Code,) and is certainly the construction of the Act of 1840, which was in force at the extension in October, 1840. The thirty-second Section of that Act (Art. 1026, Hart. Dig.) declares that the term for administration is fixed at one year &c., but the Court may extend the time on good cause shown; but, as the administrator was not compelled to render his account before the first Term after the expiration of twelve months (Ib.) the necessity for an extension could not be previously shown with any absolute certainty. At all events, the Probate Judge might refuse to act until the account was exhibited, and in fact the effect of the provision is to prolong the administration until one month after the expiration of the twelve months. On no construction of the Act could the extension in October, 1840, be regarded as too late, or as not maintaining an unbroken chain of administration. On the succeeding December the sale under which defendant claims was effected, and it is most manifest, that the administrator, by whom it was made, was not only recognized by the Court as a lawful administrator, but his authority as such is shown by the positive and unimpeachable evidence of the record.

The property was sold on a credit of four months, and had the deed been made immediately there could not have been a shadow of difficulty in the case. But the deed was not made until 1844, and in the case, as agreed, the plaintiffs object to the deed on the grounds viz:

1st. That Jones was not administrator at the order of sale, nor at the execution of the deed.

2nd. That it is void for uncertainty.

The objection that he was not administrator at the order of sale has been disposed of, and it has been shown by the incontestible evidence of the record, that he was legally and regularly administrator, at the order of sale and at the time of sale. The question is now made as to his administratorship, at the execution of the conveyance.

It is not essential to the title of the defendants, that the deed from Jones, as administrator, to McFaddin, should have been introduced. The fact of sale in accordance with the order, and the payment of the purchase money are in proof, and would be sufficient for the defence, although no deed may have been made by the administrator and none offered in evidence. (Miller v. Alexander, 8 Tex. R. 32.) And if necessary for the rights of the purchaser, it would seem that an administrator, although his office may have expired, might execute a formal conveyance for lands sold and the purchase money paid during his administration. But records of the Probate Court show that the administration was not in fact closed on the expiration of the eight months extension in October, 1840. On the 25th March, 1843, Nancy Crawford, one of the heirs, joined by her husband, (and who are plaintiffs in this suit,) filed their petition, stating that the succession had been opened much more than one year, that no final settlement had been had thereon, praying for citation that Jones might appear and make such final settlement, and in 1845 the administrator, after due notice given as prescribed by law, appeared and having given a full account of his administration, was finally and forever discharged.

At the execution of this deed Jones was acting as administrator and was recognized by the Probate Court as acting in that capacity, and on the principles of the decision in Poor v. Boyce, 12 Tex. R. 440, his authority could not be called in question by the heirs, for the purpose of invalidating lawful acts done by him in the due course of administration, to the prejudice of third persons claiming under those acts. His powers were derived from that Court. He was its officer and as was said in that case, third persons connot be required to look further than to see that he is acting with the sanction of a Court of competent jurisdiction to confer and revoke the power and supervise his acts. This case does not require a discussion of the doctrines maintained in the case cited, or that we should retrace the reasons on which they are sustained, if indeed that shall be deemed necessary in any case The act done was not essential to the rights of the purchaser. It was but the completion of an equitable title, which could not be gainsaid by the heirs, the sale having been not only legally but fairly made, and the purchase money having been paid and applied to the discharge of the debts of the estate. The act, viz., the deed of the administrator, not being essential to support the defence, and the want of it merely, not giving the plaintiffs the right to a recovery, we will refer, without further observation, to the case of Poor v. Boyce, and state that the deed comes within the principle of the decision, and the objection that Jones was not administator is not sound, and consequently is no ground for the rejection of the deed.

Nor is there more force in the objection that the deed was void for uncertainty. The blanks were in the recitals of the deed. They form no essential part of the conveyance, however convenient they may be for purposes of reference; and had they been left out altogether, the validity of the deed would not have been impaired.

The claim of the plaintiffs appears to have no merit, moral, legal or equitable. That the sale was necessary is the conclusive presumption from the record and the order of sale.

That it was fairly made and the proceeds honestly applied is not questioned. The final account of the administrator was passed without objection,—at least none appears. The heirs have received the benefit of the sale, and have recognized it by their silence and by their acts. In 1849 the estate was partitioned, no attempt being made to include this tract. Several of the lots in partition are described as being bounded on the land owned by the defendant. No attempt or offer, made to refund the purchase money, yet, notwithstanding these equities, the attempt is made to dispossess the purchaser, who, reposing on the guarantee of a conclusive decree, has entered into possession, and made large and valuable improvements, and after the land has greatly increased beyond its original value. The decree bound the estate, and all who claim an interest in the property. The sale was necessary for the payment of debts, and they have been paid by the proceeds; and it would be a scandalous iniquity to suffer an innocent purchaser to be entrapped and stripped of both money and land, giving the one over to the creditors, and restoring the other to the heirs. Such injustice can find no sanction in principles of law fairly construed and administered with a view to promote honesty and fair dealing.

In closing this Opinion we will only observe that several of the heirs are barred by the statute of limitations. Five years possession under the deed would bar all those not laboring under disability. Whether the statute did not commence to run against the administrator, from the sale, and against all the heirs represented by the administrator, is a question not without interest, but is not essential to the decision. Whether the married women among the heirs, and who have been under coverture from the opening of the succession, are not barred, is a question which, under other circumstances might require attention. Two of them, with their husbands, petitioned for division, and they all acquiesced in the partition, excluding the land in controversy and bounding their lots up-

on this land, describing it as belonging to defendant. No objection was made to the final settlement of the administrator. The laws of limitation do not run against married women, yet they must be bound by all acts of their husbands fairly done as their representatives in judicial proceedings. But without further examination of this point, it is sufficient to say that on other points the law of the case is fully with defendant, and therefore let judgment be affirmed.

Judgment affirmed.